UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No.: | CV 14-09721-AB (Ex) | Date: | July 2, 2015 |
|---|---|---|---|

| Title: | *NYC Topanga, LLC v. Bank of America, National Association* |
|---|---|

Present: The Honorable ANDRÉ BIROTTE JR.

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] Order GRANTING Defendant's Motion to Dismiss WITHOUT LEAVE TO AMEND and DISMISSING Plaintiff's Complaint WITH PREJUDICE (Dkt. No. 17)

Pending before the Court is Defendant Bank of America, National Association's Motion to Dismiss Plaintiff NYC Topanga, LLC's complaint. (Dkt. No. 17.) Plaintiff filed an Opposition (Dkt. No. 22) and Defendant filed a Reply (Dkt. No. 23). The Court took this matter under submission (Dkt. No. 24) and having considered the materials submitted, the Court **GRANTS** the Motion to Dismiss.

## I. FACTUAL BACKGROUND

On January 6, 2005, Plaintiff NYC Topanga, LLC ("Plaintiff") executed a Business Loan Agreement (the "Loan Agrerement") for a $3,060,000 business loan with a variable interest rate from Defendant Bank of America, National Association ("Defendant"). (Dkt. No. 1-1, ¶ 6; Dkt. No. 18, Ex. A.) Five months later, in June 2005, Plaintiff entered into an interest rate swap agreement (the "Swap Agreement"), which converted the entire loan from a variable interest rate to a fixed interest rate.

(Dkt. No. 18, Ex. B.) The Swap Agreement became effective on July 15th, 2005, and included a schedule ("Schedule A") of the notional amounts of the loan subject to the fixed interest rate on a monthly basis. (*Id.*, at p. 15.) Schedule A indicates that, as of the effective date, the amount subject to the fixed interest rate was $3,026,994.72. (*Id.* at 21.) Although Plaintiff signed this Agreement (*id.* at p. 20), Plaintiff alleges that it did so in reliance on Defendant's oral representations that only 50% of the amount of the loan would be subject to the fixed rate. (Dkt. No. 1-1, ¶¶ 9-10.)

Almost ten years later, Plaintiff alleges it elected to hire a financial expert to review the loan documents. (Dkt. No. 1-1, ¶ 14.) Plaintiff does not allege, however, why it suddenly decided to have an expert review it's nearly nine-year-old loan documents in late 2013. The expert determined that, contrary to what Plaintiff allegedly believed, Defendant had indeed converted the entire loan amount to a fixed interest rate without Plaintiff's knowledge or consent. (*Id* at ¶¶ 14, 17.) As a result, Plaintiff alleges that it has been financially harmed in excess of $749,000 based on Defendant's oral misrepresentations about the amount of loan principal subject to the Swap Agreement. (*Id.* at ¶ 27.) On November 14, 2014, Plaintiff brought an action against Defendant in the Los Angeles County Superior Court alleging causes of action for fraud and deceit, negligent misrepresentation, and suppression of fact. (*See generally,* Dkt. No. 1-1.) Defendant removed the action to this Court on December 15, 2014, (Dkt. No. 1) and now moves to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. (Dkt. No. 17.) Plaintiff opposes (Dkt .No. 22), and Defendant filed a reply brief. (Dkt. No. 23.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require "detailed factual allegations," it does demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *accord Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'").

Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, "[u]nder the "incorporation by reference" rule of this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment. *Id.* A document that is not attached to the complaint may be "incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6). *Id.* This incorporation doctrine is permitted to prevent plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds as recognized in *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

### III. DISCUSSION

#### A. Judicial Notice

Defendant asks the Court to take judicial notice of three documents: (1) the January 2005 Loan Agreement; (2) the June 2005 Swap Agreement; and (3) an International Swaps and Derivatives Association ("ISDA") 2002 Master Agreement, which was incorporated by reference into the Swap Agreement. (Dkt. No. 18.) "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment…." *United States v. Ritchie*, *supra*, 342 F.3d at 907. But as noted above, "[u]nder the 'incorporation by reference' doctrine in this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment" under certain circumstances. *Davis v. HSBC Bank Nevada*, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotes omitted). Specifically, "[e]ven if a

document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, *supra*, 342 F.3d at 908. A court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id*.

Plaintiff opposes judicial notice of the documents under the "incorporation by reference" doctrine on two grounds. First, Plaintiff asserts that none of the documents "are 'central' to Plaintiff's claim" because "[t]he Complaint alleges three causes of action related to [Defendant's] fraud…in securing the Swap Agreement…." (Dkt. No. 22, p. 4:17-21.) Plaintiff argues the Swap Agreement cannot be "central" to its complaint because "Plaintiff does not allege that [Defendant] breached the Swap Agreement *per se*." (*Id*., at p. 4:22.) Notably, Plaintiff cites no authority for the proposition that a contract can only be "central" to a claim for breach of contract. Without the initial Loan Agreement, for example Plaintiff would have no claim because there would have been no loan to refinance with an interest rate swap. And without the Swap Agreement (which incorporated the ISDA Master Agreement by reference), Plaintiff would have no claim because its entire theory of is that the Swap Agreement refinanced more of the Loan Agreement than Defendant orally represented. There is simply no reasonable dispute that the documents "form[] the basis of the plaintiff's claim," *United States v. Ritchie*, *supra*, 342 F.3d at 908, and are properly considered on a motion to dismiss.

Plaintiff also opposes judicial notice of the Swap Agreement (and by extension, the ISDA Master Agreement) on the ground that the document Defendant "is of such poor quality that it is entirely illegible" making it "impossible to tell whether the document…is indeed the same document referenced in the Complaint." (Dkt. No. 22, p. 3:3-6.) Admittedly, the version of the Swap Agreement in Defendant's request for judicial notice is a copy of a faxed document and is less-than-ideal in quality. (*See* Dkt. No. 18, pp. 13-27 [Exh. B].) Upon independent review of the document, however, the Court does not find that the Swap Agreement in the request for judicial notice is illegible. Nor does Plaintiff actually dispute any of the relevant facts that Defendant draws from the Swap Agreement as inconsistent with the original document. Namely, Plaintiff does not dispute that it executed the Swap Agreement in June 2005 and that the express terms of the Swap Agreement provided for a refinance of $3,026,994.72 in principal. To the contrary, Plaintiff *affirmatively posits* those very same facts in opposition. (*See* Dkt. No. 22, pp. 11:19-26 [arguing that the Complaint adequately alleges Plaintiff entered the Swap Agreement within six months of the January 6, 2005 Loan Agreement], and 11:27-12:1 [noting allegations in the Complaint that the "Swap Agreement…converts 100% of the original loan [to a fixed interest rate], as opposed to just 50%"].)

To the extent Plaintiff is concerned about the authenticity of the Swap Agreement,

Plaintiff had a simple remedy to clarify any ambiguity: Plaintiff could have submitted a copy of the Swap Agreement itself.[1] Plaintiff's "ongoing and substantial reliance on the [Swap Agreement] as a basis for [its] allegations substantially weakens [its] position" that its authenticity is subject to reasonable dispute. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999), abrogated on other grounds as recognized in *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir.2008). Plaintiff cannot "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which [its] claims are based," *Parrino v. FHP Inc.*, 146 F.3d at 706, and the Court **GRANTS** Defendant's request for judicial notice.

### B. Statute of Limitations

Defendant first argues that Plaintiff's entire action is barred by the applicable statute of limitations. (Dkt. No. 17, pp. 6-9.) Although there is some dispute regarding which state's law sets the applicable statute of limitations (California or New York), both parties agree that the result is the same under either state's statute of limitations. (Dkt. No. 17, pp. 2:3-6; Dkt. No. 22, p. 6:10-11.) They simply disagree on the result.

Regardless of whether New York or California law applies, Plaintiff's claims are barred by the statute of limitations. Under New York law, the statute of limitations for fraud, negligent misrepresentation, and suppression of fact is six years. N.Y. C.P.L.R. § 213. Under California law, a three-year statute of limitations applies. Cal. Code Civ. Proc. § 338. Plaintiff concedes in opposition that "the fraud as alleged occurred between the date of the original Loan Agreement (January 6, 2005)… and the execution of the Swap Agreement" on June 20, 2005. (Dkt. No. 22, p. 11:19-21 [citing Dkt. No. 1-1, ¶¶ 8-13]; Dkt. No. 18, Exh. B, p. 12 [Swap Agreement dated June 20, 2015].) Yet Plaintiff waited over nine years before filing this action on November 14, 2014. (Dkt. No. 1-1.) Absent some form of tolling, the time period in which Plaintiff could have brought these claims under either New York or California law expired years before Plaintiff brought suit in November 2014.

#### 1. Delayed Discovery

Plaintiff contends its claims are not time-barred by either New York or California law under the doctrine of delayed discovery. (Dkt. No. 22, pp. 5-7.) According to Plaintiff, "the earliest date on which Plaintiff can be imputed to possess knowledge of

---

[1] Plaintiff affirmatively alleges, for example, that its financial expert reviewed the swap documentation and that its records were sufficient to "discover" the true amount of the Swap Agreement. (Dkt. No. 1-1, ¶ 14.) *See In re Silicon Graphics Inc. Sec. Litig.*, *supra*, 183 F.3d at 986 (a plaintiff "having submitted expert declarations that rely on the [documents] at issue, [a plaintiff] can hardly complain when [the defendants] refer to the same information in their defense").

[Defendant's] fraud is November 15, 2013" because the Complaint (filed November 14, 2014) alleges that Plaintiff "discovered" the fraud "within the last year" before filing. (*Id.*, p. 6:5-9.) Plaintiff does not sufficiently allege facts that would bring this action within the delayed discovery exception that would toll the statute of limitations.

The standard for delayed discovery under New York and California law is effectively identical. Under New York law, "[t]he statutory periods for claims . . . begin to run when the claim accrued or upon discovery of the facts constituting the alleged fraud." *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993). Discovery of the facts includes constructive and inquiry notice as well as actual notice. *Id.* Under New York law, "[e]quitable tolling will stay the running of the statute of limitations only so long as the plaintiff has exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud." *Dodds*, 12 F.3d at 350 (citations and internal quotations omitted). "To be within the rule, a plaintiff must show justifiable reliance on misrepresentations as the cause of the delay in filing, and must exercise diligence in filing the action in a reasonable time after the facts giving rise to the [action] have ceased to operate." *Coleman & Co. Sec. v. Giaquinto Family Trust*, 236 F. Supp. 2d 288, 299 (S.D.N.Y. 2002).

Similarly, under California law, "[t]he cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud . . . ." Cal. Civ. Proc. § 338 (4). Under this rule a plaintiff "must *plead and prove the facts* showing: (a) Lack of knowledge; (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); and (c) How and when [Plaintiff] did actually discover the fraud or mistake." *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991) (emphasis original). Constructive and presumed notice or knowledge are equivalent to knowledge. *Id.* "So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . the statute commences to run." *Id.*

### 2. Plaintiff's claims do not fall with the Delayed Discovery rule

Plaintiff contends that it lacked and was unable to obtain knowledge of the alleged conduct that is the basis for the fraud causes of action. However, the judicially noticeable record permits only one conclusion: Plaintiff was on notice of the facts giving rise to the causes of action well within the statute of limitations. It is axiomatic that "[o]ne who enters a contract is on notice of the provisions of the contract." *Wallace v. Chafee*, 451 F.2d 1374, 1377 (9th Cir. 1971). This is equally true under California and New York law. *Madden v. Kaiser Found. Hospitals*, 552 P.2d 1178, 1185 (Cal. 1976) ("one who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the

language of the instrument"); *British W. Indies Guar. Trust Co. v. Banque Internationale a Luxembourg*, 567 N.Y.S.2d 731, 732 (N.Y. App. Div. 1991) (fact that contract term was "not brought specifically to [plaintiff's] attention [was] of no avail, since, as a signatory to the contract, [plaintiff] is presumed to know the contents of the instrument she signed and to have assented to such terms").

Plaintiff concedes that it executed the Swap Agreement in 2005. (Dkt. No. 1-1, ¶ 10.) This fact alone is dispositive. The Agreement expressly provided in Schedule A that the fixed interest rate applied to a total of $3,026,994.72 in principal. (Dkt. No.18, Exh. A, p. 21 ¶ 14.) Irrespective of whether that amount constituted the entire loan, the Agreement's express terms flatly contradicted any earlier oral representation that the swap would only include 50 percent of the loan principal.[2] Having executed the Agreement in June 2005, Plaintiff was on notice of its terms (and the alleged discrepancy) as a matter of law at that time. *Wallace v. Chafee*, *supra*, 451 F.2d at 1377. For purposes of delayed discovery, "the means of knowledge are the same thing in effect as knowledge itself." *O'Connor v. Boeing N. Am.*, Inc., 311 F.3d 1139, 1147 (9th Cir. 2002), quoting *Wood v. Carpenter*, 101 U.S. 135, 143 (1879).

Plaintiff is presumed to know and to have assented to the terms of the Agreement that it signed. As such, Plaintiff is charged with notice that Defendant's alleged oral representations contradicted the written terms of the Swap Agreement from the time it entered into the Swap Agreement. *See e.g.*, *Calvi v. Prudential Sec., Inc.*, 861 F. Supp. 69, 71 (C.D. Cal. 1994) (holding that any reliance by plaintiff on the oral statements of his broker was unreasonable in light of the disclaimers in the written memoranda). While Plaintiff alleges that it was not experienced with "exotic financial derivatives products" such as interest rate swaps (Dkt. No. 1-1, ¶ 11), "[Plaintiff] cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put [it] on inquiry notice." *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 466 n.18 (7th Cir. 1990); *accord Coleman & Co. Sec. v. Giaquinto Family Trust*, 236 F. Supp. 2d 288, 309 (S.D.N.Y. 2002) (citing *DeBruyne* for this proposition); *Calvi v. Prudential Sec., Inc.*, *supra*, 861 F. Supp. at 71 (same). Plaintiff had the means to discover the alleged fraud

---

[2] The original loan in January of 2005 was for $3,060,000. (Dkt. No. 18, p. 7 [Exh. A].) Several months later in June 2005, the swap agreement covered $3,026,994.72 of principal. (*Id.*, at p. 21 [Exh. B, Schedule A].) While it would be reasonable to infer that the slightly reduced swap amount reflected the original principal less a few months of loan payments, Plaintiff correctly notes there is no allegation or judicially noticeable document before that Court showing that that Plaintiff actually made any loan payments during that period. (*See* Dkt. No. 22, p. 5.) Nonetheless, by Plaintiff's own allegations, the swap agreement would have included, at most, $1,530,000, or half the original principal. Even if the $3,026,994.72 amount subject to the swap did not account for the entire outstanding principal, Plaintiff cannot and does not dispute that the Agreement expressly identifies a significantly larger swap amount than Plaintiff would have expected in light of Defendant's alleged representation that the Agreement would only include 50 percent of the loan principal.

within the applicable statute of limitations, but failed to exercise reasonable care and diligence to do so.

Finally, Plaintiff argues that the applicability of the delayed discovery rule in this case is a question of fact better decided at summary judgment or trial than on a Rule 12(b)(6) motion. (Dkt. No. 22, pp. 7-8.) It is true that "the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, [and] 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)). But even Plaintiff acknowledges that this general rule only applies "where the running of the statute cannot be determined from the face of the complaint … ." (Dkt. No. 22, p. 7:26-28.) "[W]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). This is not an case where the application of the delayed discovery rule depends on a *factual* assessment about what a reasonable person would have suspected under the circumstances. Under both California and New York law, Plaintiff is charged with knowledge of the Agreement's express terms *as a matter of law*. One of those terms reflected that the amount subject to the swap was $3,026,994.72. To the extent that amount differed from the amount Defendant orally represented to Plaintiff, Plaintiff was on notice of that fact as of June 2005 when it executed the Swap Agreement. Plaintiff's failure to read the Agreement cannot support a claim for delayed discovery, *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, *supra*, 920 F.2d at 466 n.18, and it is clear from the face of the complaint and the judicially noticeable record that Plaintiff's claims are barred by the statute of limitations.

## IV. CONCLUSION

Plaintiff does not dispute that its claims for fraud, negligent misrepresentation, and concealment would be time barred absent delayed discovery. Under both California and New York law, however, Plaintiff is presumed to know the Swap Agreement's terms (including the swap amount) as a matter of law. Plaintiff was on notice of all the relevant facts – the alleged representation that the swap would only cover half of the loan principal and the express provision in the Swap Agreement that it would cover $3,026,994.72 of the loan principal – no later than June 2005. That Plaintiff alleges it waited nearly nine years to review the Swap Agreement's terms is of no import. Both California and New York law provide that Plaintiff was on notice of the alleged fraud in June 2005 and preclude Plaintiff's claim of delayed discovery as a matter of law. Because Plaintiff's claims are time barred on their face, the Court need not determine whether Plaintiff has otherwise failed to state a claim for relief.

Plaintiff's brief request for leave to amend is also unavailing. (Dkt. No. 22, p. 15.) Leave to amend is appropriate unless it is clear that the complaint cannot be cured in alleging different facts. *Silva v. Di Vittorio*, 658 F.3d 1090, 1105 (9th Cir. 2011). In ruling on a request for leave to amend, courts consider bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *See Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003); *see also Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). Futility alone is sufficient to deny leave to amend. *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir.1995) ("[D]istrict courts need not accommodate futile amendments."); *accord Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Here, allowing leave to amend would be futile as Plaintiff's claims are time-barred on their face under New York or California law pursuant to the applicable statute of limitations. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) (holding "because [the plaintiff's] claims are barred by the statute of limitations, any amendments would have been futile" and district court did not err in dismissing fraud claims without leave to amend).

For the reasons articulated above, the Court **GRANTS** Defendant's Request for Judicial Notice (Dkt. No. 18) and **GRANTS** Defendant's Motion to Dismiss **WITHOUT LEAVE TO AMEND.** (Dkt. No. 17.) The Court **DISMISSES** Plaintiff's Complaint **WITH PREJUDICE.**

**IT IS SO ORDERED.**